M’Girk, C. J.,
delivered the opinion of the Court.
This was an action commenced under the statute for freedom. Verdict and judgment against Julia, the plaintiff. The bill of exceptions shows the following case: that McKinney, the defendant, bought the plaintiff as a slave from one Lucinda, Carrington; that in the year 1829, Mrs. Carrington lived in the State of Kentucky; that she then had in her possession the plaintiff, Julia, as a slave; that she then and there determined and declared her intention to be, to remove and take with her Julia to the State of Illinois; that a witness in this cause applied to her to buy Julia, telling Mrs. Carrington that she could not hold Julia in Illinois as a slave; that if she took her there she would be free. Mrs. Carrington refused to sell Julia 5 said she would not keep Julia in Illinois, but intended to hire her out in Missouri. Accordingly Mrs. C. moved to Illinois, brought with her said Julia, arrived in Pike county, Ill., about 27th or 28th of October, settled herself there, *194 purchased land, &c. She kept Julia there with her till about the 1st of December the same year, exercising the ordinary acts of ownership and dominion over her, which are usually exercised by masters over their slaves : that in the mean time Mrs. Carrington hired Julia about two days to some person to work, which work was performed, and that she received pay therefor : that about the 1st of December in the same year, Mrs. Carrington sent Julia to Louisiana, Missouri, a distance of about 30 miles and hired her out: that Julia lived in Missouri some time, became sick and that Mrs. C. then sent for Julia, took her home into Pike county, in Ill., where she was kept till she recovered her health : that Mrs. C. then took or sent Julia to St. Louis and sold her to S. McKinney, the defendant.
Several instructions were asked by the defendant, which were given and excepted to. The plaintiff also moved for a new trial, which was refused.
The first instruction given by the Court is, that if the jury believe from the evidence that the plaintiff, Julia, was takeninto the State of Illinois by her owner without any intention on the part of such owner to make that State the residence of Julia, that the plaintiff is not entitled to recover in this action. We will consider this instruction before we notice the others. The plaintiff’s claim to freedom is based on the 6th article of the Constitution of the State of Illinois, which declares that neither slavery' nor involuntary servitude shall hereafter be introduced into this State otherwise than for the punishment of crimes whereof the party shall have been duly convicted. The article then goes on to make some provision with regard to hiring persons bound to service in other Slates, and concludes by saying, any violation of this article shall effect the emancipation of such person from his obligation to service. We see by this Constitution that the very introduction of slavery, works an emancipation of the slave, and it is argued that if we give this Constitution a literal construction, no one can travel through that State with his slaves, without emancipating them. It is true that a literal construction would lead directly to this result. Every law should be adjudicated on with a view to the end and object thereof. The object of the Constitution of Illinois was riot to prevent persons owning slaves in Kentucky, from passing through Illinois with their slave property to Missouri, but to prevent the relation of master and slave from existing in that State by an inhabitant and resident thereof. We are furthermore of opinion that all persons who are citizens of any of the States, have a right by the Constitution of the United States to pass through Illinois with any sort of property that they may own in the State where they migrate from. The 2d section of the 4th arricie of the Constitution of the United States says, that the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States. We are of opinion that it is the undoubted right of every citizen of the United States to pass freely through every other State with his property of every description, including negro slaves, without being in any way subject to forfeit his property for having done so, provided he does not subject his property by a residence, to the action of the laws of the State in which he may so reside. Another view of the subject is, that out of the general words of the Illinois Constitution, of necessity exceptions must be raised. Though it is true, that slavery shall not be introduced into that State under penalty of forfeiting the property, yet it can be so introduced so far as to permit persons passing through the State, as emigrants or mere travelers, to carry with them their slave property and to retain in them their right to such property, while they retain the character of emigrants or travelers, otherwise there could be no emigration through the State with *195 slave property, which is a thing it cannot reasonably be supposed the Constitution of Illinois intended to forbid. How long the character of emigrant or traveler through the State may last, cannot by any general rule be determined ; but it seems that reason does require it should last so long as might be necessaiy, according to the common modes of traveling, to accomplish a transit through the State. If any accident should happen to the emigrant which in ordinary cases would make it reasonable and prudent for him to suspend his journey for a short time, we think he might do so without incurring a forfeiture, if he resumed his journey as soon as he safely could. Something more than the mere convenience or ease of the emigrant ought to intervene to save him from a forfeiture. Something of the nature of necessity should exist heforehe would or ought to be exempt from the forfeit me. if swollen streams of water which could not bo crossed without danger should Inkrvene, serious sickness of the family, broken w agons, and the like should exist, there would he good cause of delay so long as they exist, ifthejourney is resumed as soon as these impediments are removed, provided also due diligence is used to remove them. In the case before us the owner of the slave was not an emigrant, but went into Illinois with an avowed view to make that State her hrme. She took up her residence there, with her slave in her possession, and kept the slave there for upwards of one month, and treated the slave in all respects as slaves are treated in States where slavery is allowed. These acts of the owner suiely amounted to the intioduction of slavery in Illinois. Unless, therefore, the case car be brought within some reasonable and equitable exception, to be engraf e.l on the Constitution of Illinois, the plaintiff will be entitled to exact the forfeitiue of emancipation. In this case we see nothing in the nature of accident to prevent the owner from taking the plaintiff to Missouri, immediately. The excuse set up is, that the owner was a widow and might not have had the means of immediate tta; spoliation of the slave to Missouri; that she was a new comer in the country and might be -poor and therefore unable to do i(; that some reasonable time ought to be allowed to her to provide a residence for herself and family, and that one month in this case is not too much. We are of opinion that the excuse to raise an exception, must be something more than the mere convenience or inconvenience of the owner. But the instruction assumes that if the owner did not intend to make Illinois the residence of the slave, then there is no violation of the Constitution. Is it true that if a person says he does not intend to do an act and yet does it, that the act is not done? The Constitution of Illinois does not regard the intention to introduce or nol to introduce slavery, but prohibits the act. If a person says he doe3 not intend to introduce slavery, yet if he does introduce it de facto, can the innocent intent save him from (lie forfeiture? We think it cannot, unless he can also show that his case raises a reasonable ancj necessary-exception. But in this case the evidence is, that the owner did intend and in fact did introduce slavery in Illinois, but declared that she did not intend to continue it for any length of time; but that she would take the slave to Missouri and there hire her out. But suppose the owner did not intend to make Illinois the place of th® slave’s residence permanently, but only for one month ; yet slavery is introduced and continued for the mere convenience of the owner without any circumstances which raise a just or even a reasonable exception in her favor. The case of Winney Whiteside, decided by this Court, has been cited to prove that what the owner intended, is to be a criterion to govern the question of freedom or slavery. That was a case where the owner of a 3lave removed to the North-Western Territory, norr *196 Illinois, with the slave, with the intent to make that country his residence, and he did in fact make it his residence, as well as that of his slave also. The ordinance of Congress for the government of that Territory, declares there shall be neither slavery nor involuntary servitude in the Territory. This Court decided that if the owner went there with his slave, with intent to make that place his permanent residence, and the residence of his slave, an d did in fact do so, that the slave was by sack residence free 5 But the Court did not decide that the slave was free by reason of the intent being declared., <
The second instruction given assumes that the slave is not entitled to freedom, because she was taken to Illinois and remained there till she was cured of sickness. We will give no opinion on this point, as we consider the case fully decided on the first and third instructions.
The third instruction is, that the plaintiff is not entitled to recover under the 2d section of the 6th article of the Constitution of Illinois. The section declares “ that no person bound to labor in any other State, shall be hired to labor in this State except within the tract reserved for the saltworks, &c.” It then concludes as before stated, that any violation of this article shall effect the emancipation of such person from Ms obligation to service. Whether this instruction intends to decide that the facts testified are true or untrue,-or only decides that the proof and case made does not in law entitle the party to recover, we do not exactly know. It seems however that the instruction is wrong, because it decides both the fact and the law. But if the instruction only assumes to decide the law, yet it is wrong. The evidence is, that after the slave was fairly introduced into Illinois and settled for the time being, but with an intent on the part of the owner to remove the slave at some future time to Missouri, the owner did hire the slave to a person to labor for one ot two days, and received the pay for the hire. The Court instructed the jury that this hiring is not a hiring within the prohibition above cited. We suppose the Circuit Court thought the degree or quantity too small. We believe the object of this prohibilion was to prevent slave labor from becoming a substitute for white or free labor throughout the State. The Constitution makers have therefore prohibited the thing in every possible degree. Here was a hiring of a person bound to labor in Kentucky, whilst in Kentucky, brought into Illinois, (not to reside there say if you •will,) and hired to labor for one or two days by the owner. What difference can it make if the hiring hadbeen for one hundred days ? We can see none, except in the degree or quantity of time: with regard to the motion for a new trial, we think the Court erred in refusing it. The reasons assigned for the new trial are, that the verdict is against law and evidence. The evidence is sufficient to bring the case within the operation of the Constitution.
The judgment of the Circuit Court is reversed, the cause is remanded for a new trial.